UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 10 2018 ★
LONG ISLAND OFFICE

---

POWER UP LENDING GROUP, LTD.,

    Plaintiff,

-against-

GAWK INCORPORATED, SCOTT KETTLE, AND CHRISTOPHER G. HALL,

    Defendants.

---

Civil Action No.:

CV-18 3943

AZRACK, J.

LOCKE, M. J.

## COMPLAINT

Plaintiff, Power Up Lending Group, Ltd ("Power Up or Plaintiff"), files this Complaint and alleges the following:

### I. SUMMARY

1. Through this action, Power Up seeks to recover losses caused by Gawk Incorporated ("Gawk" or "the Company"), Scott Kettle ("Kettle") and Christopher G. Hall ("Hall") (collectively "the Defendants") through their intentional and/or reckless misconduct, including compensatory and/or rescissory damages, which losses may only be avoided if the relief described herein below is granted. That at all relevant times, Kettle was and remains the President, Chief Executive Officer, and Chief Information Officer of the Company, Hall was and remains the Chief Financial Officer of the Company, and both were and remain as Directors of the Company.

2. That Power Up was an investor in Gawk and was well-known to the Defendants, who had previously lulled Power Up into a false sense of security by successfully completing a prior financial transaction. Power Up's business strategy at the time of the securities purchases and loans and issuance of notes at issue was to invest in publicly-traded, nano-cap companies whose securities are traded on the Over the Counter Bulletin Board, OTCQB. Nano-cap

companies, such as Gawk, are often capital-constrained, as their low market capitalization hinders their access to banks or investment firms. Power Up provides capital to such companies, as an investment in return for shares purchased at a discount to market price.

3. That Power Up invested a total of $63,000 in the Company by purchasing securities in the form of a Convertible Promissory Note ("the Note") directly therefrom and making advancements thereto, pursuant to the Note and Securities Purchase Agreement, and has sustained damages of $99,000 exclusive of attorney's fees, pre-judgment interest, costs and late fees. That advancement was made pursuant to the fraudulent misrepresentations and conduct of the Defendants, and most particularly of Kettle and Hall, who are directly and personally responsible and liable for such losses.

## II.   JURISDICTION AND VENUE

4. Defendants, directly and indirectly, singly or in concert, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, or of the mails in connection with the acts, practices and courses of conduct alleged in this Complaint, certain of which occurred within the Eastern District of New York, such that jurisdiction exists in this state.

5. That in addition, jurisdiction exists under 28 U.S.C. § 1332 as there is complete diversity between the parties and more than $75,000 is at issue exclusive of costs, fees and interest.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), because certain of the transactions, acts, practices, and courses of conduct constituting violations of duties occurred within this judicial district. Additionally, Power Up transacts business and maintains its principal place of business in this district. That further, the Company has contractually agreed with Power Up to fix venue for any action in the State of New York, County of Nassau, which is within the Eastern District and the jurisdiction of this Court. In addition, Kettle and Hall are sufficiently connected with the Company and the transactions at issue, for which they were the

signatories, so that they are likewise bound by the contractual venue and jurisdictional provisions contained in the Agreements.

7. That in connection with the acts alleged in this Complaint, the Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III. PARTIES

8. That at all times relevant herein, Power Up has been and remains a corporation organized and existing under the laws of the State of Virginia with an office for business in the County of Nassau, not engaged in the banking business, and is a citizen of the State of Virginia.

9. That at all times relevant herein, the Company has been and remains a corporation organized and existing under the laws of the State of Nevada, with an office for business in the State of California and is a citizen of the State of Nevada.

10. That at all times relevant herein, Kettle and Hall have been and remain residents of the State of California and are citizens of the State of California.

### IV. FACTUAL ALLEGATIONS

11. That heretofore and from time to time, the Defendants have made material misrepresentations of fact to Power Up, knowing that such misrepresentations were false, and upon which Power Up relied and was damaged. That these representations were made with the deliberate knowledge of aforethought that the contractual obligations of the Company could not be met and would not be met, such that the funds advanced to the Company were taken under false pretenses and fraudulent inducement.

12. That as a result of these material misrepresentations, Power Up invested $63,000 in Gawk and sustained damages thereby.

## AS AND FOR A FIRST CAUSE OF ACTION
### PROMISSORY NOTES DEFAULTS

13. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 12 of this Complaint with the same force and effect as if fully set forth at length herein.

14. That on or about April 23, 2018, the Company made, executed and delivered to the Plaintiff a convertible promissory note ("the Note") in the amount of $63,000, which Note was issued pursuant to a Securities Purchase Agreement ("the Agreement") of even date, which provided for certain issuance of, and conversion rights in and to the common stock of the Company.

15. That both the Note and the Agreement provided that both jurisdiction and venue for any action between the parties would be in the State Courts of New York or in the Federal Courts located in the Eastern District of New York. In addition, the parties waived any objection to jurisdiction and venue of any action and agreed not to assert any defense based upon lack of jurisdiction or venue or based upon forum non conveniens.

16. That the Note provided in pertinent part that in the event that the Company shall fail to maintain the listing of its Common Stock on at least one of the over counter markets, or an equivalent replacement exchange, the Company shall be in material default of the Note and Agreement.

17. That the Note and Agreement further provide that at the end of a six-month holding period, the Plaintiff would have the unfettered right to convert the debt represented by the Note into the common stock of the Company at a pre-set discount, which stock upon being purchased by the Plaintiff would then be sold in the market place at a profit, which was the entire purpose of the transaction at issue.

18. That no portion of the Note has been paid through the conversion process or otherwise.

19. That on April 30, 2018, a mere 3 days after the Note was funded, the Company filed a form 15, entitled " Certification and Notice of Termination of Registration under Section 12G of Securities and Exchange Act of 1934 or suspension of duty to file reports under Sections 13 and 15D of the Securities and Exchange Act of 1934," thereby de-listing the Common Stock of the Company and completely thwarting and preventing the Plaintiff from being able to convert the debt into stock and to sell same, all in a preconceived and purposeful plan to do so, thereby materially and fundamentally breaching the Note and Agreement and defrauding the Plaintiff in a preconceived manner.

20. That by virtue of the filing of this form 15, the Company fell into material default of its obligations under the Note and Agreement.

21. That as a result of these material defaults, Power Up's counsel caused a notice of default to be served upon the Company, a copy of which is annexed hereto and incorporated herein by reference.

22. That the Note provides, in pertinent part, that the failure of the Company to maintain its federal filings, constitutes an event of default under Section 3.7, entitling the Plaintiff to recover 150% of the outstanding principal amount of the Note together with accrued and unpaid interest and default interest. That by filing the form 15, the Company itself gave notice that it was no longer going to file such reports such that the filing of the form was a material and grievous default under the Note and Agreement thereby triggering the 150% default provision.

23. That the Company has caused damages to the Plaintiff in an amount equal to 150% of the principal balance of $63,000 on the Note; or not less than $99,000 in the aggregate, by failing to cure said default and Plaintiff is entitled to judgment in that amount, together with interest and default interest as set forth therein.

## AS AND FOR A SECOND CAUSE OF ACTION
## BREACH OF CONTRACT – LOST PROFITS

24. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 23 of this Complaint with the same force and effect as if fully set forth at length herein.

25. That as a direct result of the defaults of the Company and its failure to abide by its contractual obligations, Power Up has been deprived of, and continues to be deprived of, the opportunity to acquire and to sell the common stock of the Company at a profit, which profits have been irretrievably lost as the markets for the common stock can no longer be recreated.

26. That by reason of the foregoing, Power Up is entitled to judgment in an amount to be determined by the Court and equal to the lost profits that Power Up would have realized had the stock been made available and delivered to Power Up in accordance with its rights under the Note and Agreement.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT – LITIGATION EXPENSES

27. Power Up repeats and realleges each and every allegation contained in paragraphs 1 through 26 of this Complaint with the same force and effect as if fully set forth at length herein.

28. That the Note and Agreement provide that in the event of a dispute and/or litigation between the parties, the prevailing parties shall be entitled to recover all of its litigation expenses including reasonable attorney fees.

29. That by reason of the foregoing, Power Up is entitled to a judgment against the Company for the reasonable legal fees and litigation expenses paid or incurred in this action.

## AS AND FOR A FOURTH CAUSE OF ACTION – FRAUD

30. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 of this Complaint with the same force and effect as if fully set forth at length herein.

31. That prior to entering into the transactions referred to above, the Company, Kettle and Hall failed to divulge that at the same time that they were entering into the Note and Agreement and accepting the proceeds of the Note, that they had a preconceived intent to default under the same by filing the form 15 promptly after executing the Note and Agreement and accepting the proceeds.

32. That the Defendants were under a duty to speak and to reveal those material facts, all of which should also have been revealed to the Plaintiff.

33. That the Plaintiff entered into the transactions complained of and advanced the funds referred to above without any knowledge of such wrongdoing, and the Plaintiff would never have done so had it been aware of these allegations of wrongdoing as described above.

34. In an obvious intent to defraud, the Plaintiff only a few days after receiving the funding from the Plaintiff, the Defendants caused the form 15 to be filed thereby causing the Company and the Individual Defendants to breach and abrogate the Company's obligations under the Note and Agreement. That had the Defendants not concealed the truth in deliberate fashion from the Plaintiff, the Plaintiff would never had advanced the funds at issue and would have sustained no damages whatsoever.

35. That continuing thereafter and to the present day, the Defendants have failed and refused to withdraw the form 15, thereby evidencing their malicious and purposeful intent to defraud the Plaintiff as part and parcel of a fraudulent conspiracy among all of the Defendants.

36. That had the Plaintiff known of the truth of the Defendants' intentions, the Plaintiff never would have engaged in the transactions complained of or advanced the funds at issue, such that the Plaintiff was defrauded by the Company, Kettle and Hall acting in concert.

37. That by reason of the foregoing, Plaintiff demands judgment for the sum of $99,000 plus interest.

## AS AND FOR A FIFTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this Complaint with the same force and effect as if fully set forth at length herein.

39. That at all times relevant herein, the Company was an insolvent corporation as its debts exceeded its assets and it was unable to pay its current expenses as they came due.

40. That in the filings that the Company made with the SEC prior to its defaults, the Defendant admitted that it was an insolvent corporation both from a stand point of net worth and the stand point of income and expense.

41. That at all times relevant herein, Kettle and Hall were both directors and/or officers of the Company and that as a result of the Company's insolvency, a fiduciary relationship came into being between the Plaintiff, as a creditor of the Company, and Kettle and Hall.

42. That Kettle and Hall were therefore under a fiduciary obligation to use their best efforts and exercise their judgment and discretion to see to it that the assets of the Company would be utilized or made available for the benefit of the Plaintiff as a creditor of the Company.

43. That Kettle and Hall failed and refused to adhere to their fiduciary obligations or to honor the same and failed to use their best efforts and judgment to make such assets available to the Plaintiff, thereby causing the Plaintiff irreparable financial harm.

44. That by reason of the foregoing, Plaintiff demands judgment against Kettle and Hall for the sum of $99,000 based on the cause of action of breach of fiduciary duty.

## AS AND FOR A SIXTH CAUSE OF ACTION – <u>INTENTIONAL INTERFERENCE WITH CONTRACT</u>

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 of this Complaint with the same force and effect as if fully set forth at length herein.

46. That Kettle and Hall were fully aware at all times of the existence and the valid and binding nature of the Note and Agreement and that the same were legally enforceable contractual obligations of the Company.

47. That Kettle and Hall intentionally and with malice of forethought caused the Company to breach the Note and Agreement without any legal or factual justification.

48. That Kettle and Hall caused these breaches and defaults to take place for their own personal benefit as their actions made the funds advanced by Plaintiff available to be paid to themselves in compensation and other financial benefits, rather than to be used for legitimate corporate obligations or to be repaid to Power Up.

49. That as further evidence of this conspiracy to intentionally interfere with the Plaintiff's contractual rights, Kettle and Hall deliberately caused the Company to discontinue and close down a Company bank account to which Power Up had access for the purpose of making ACH withdrawals, which withdrawals were an additional safe guard made as a condition to protecting and insuring that the funds advanced by Power Up would be repaid as and when necessary.

50. That when Power Up attempted to withdraw funds from the Company's bank account through the ACH process, they found that they could not withdraw said funds because the account had been closed and the Company had opened another account thereby again breaching the Company's contractual obligations and thwarting the entire purpose of the Note and Agreement, all at the behest and direction of Kettle and Hall who took these actions for their own benefit and not for the benefit of the Company.

51. That as a result of Kettle and Hall are liable to Power Up under the theory of intentional interference of contract, thereby causing damages to Power Up of at least $99,000.

WHEREFORE, POWER UP demands judgment against Defendants as follows:

(i) For $99,000 on the First Cause of Action;

(ii) For an amount of lost profits to be determined by the Court but not less than $99,000 on the Second Cause of Action;

(iii) Awarding Power Up its reasonable legal fees and costs of litigation on the Third Cause of Action;

(iv) For $99,000 on the Fourth Cause of Action;

(v) For $99,000 on the Fifth Cause of Action;

(vi) For $99,000 on the Sixth Cause of Action; and

(vii) Together with the costs and disbursements of this action, interest at the rate of default as set forth in the Notes; pre-judgment interest as provided by statute, and such other and further relief as the Court may deem just and proper.

Dated: Great Neck, New York
       July 9, 2018

NAIDICH WURMAN LLP

By: _____
Richard S. Naidich, Esq. (RSN 4102)
111 Great Neck Road, Suite 214
Great Neck, NY 11021
Telephone: 516-498-2900
Facsimile: 516-466-3555
Attorneys for Plaintiff –
POWER UP LENDING GROUP, LTD.

## Bernard Feldman

| | |
|---|---|
| **From:** | Bernard Feldman |
| **Sent:** | Wednesday, June 27, 2018 2:41 PM |
| **To:** | sk@gawk.com; cambridgepartnersgp@gmail.com |
| **Cc:** | Stephen J. Czarnik; Seth JR Lapidus |
| **Subject:** | PowerUp Lending Group, Ltd. with Gawk Incorporated |

Scott Kettle/CEO:

Please be advised that this office is special counsel to PowerUp Lending Group, Ltd. ("PowerUp") the holder of a Convertible Promissory Note (the "Note") dated April 23, 2018 in the initial sum of $63,000.00 issued by Gawk Incorporated (the "Company"). Within seven days of the funding of that Note the Company filed a Form 15 with the Securities and Exchange Commission on April 30, 2018 terminating or suspending its duty to file reports pursuant to the Exchange Act of 1934. This Form was filed on behalf of the Company and signed by you. Such an action constitutes a default under the Note and demonstrates a fraudulent intent on both the Company and you individually to breach and abrogate the Company's obligations under the Note. Since this corporate action was taken in such close proximity to the funding of the Note, it is clear that your actions were intended to hinder, delay and interfere with PowerUp's contractual rights under the Note.

I am advised that in conversations you had with representatives of PowerUp that you agreed to have the Company withdraw the Form 15 previously filed and to have the Company become fully compliant with its filing obligations no later than Friday, June 29, 2018. Should either of these commitments fail to occur, this office has been instructed to consider the commencement of litigation against both the Company and you individually. I trust that this dire action will not be necessary and that you will fulfill your commitments. Please be guided accordingly.

### BERNARD S. FELDMAN, P.C.
*111 Great Neck Road, Suite 214*
*Great Neck, New York 11021*
*Tel. (516) 829-3800*
*Fax (516) 829-2490*
*E-Mail: bernard@bsfpc.com*

**\*\* Please help to update your records to my new email address.**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK        Civil Action No.: _____

POWER UP LENDING GROUP, LTD.,

                       Plaintiff,

    -against-

GAWK INCORPORATED, SCOTT KETTLE, AND
CHRISTOPHER G. HALL,

                       Defendants.

## SUMMONS AND COMPLAINT

**NAIDICH WURMAN LLP**
**ATTORNEYS FOR PLAINTIFF**
**111 GREAT NECK ROAD - SUITE 214**
**GREAT NECK, NEW YORK 11021**
**(516) 498-2900**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

DATED: July 9, 2018                 Signature: _____
                                     Print:  Richard S. Naidich, Esq.

Service of a copy of the within              is hereby admitted.
Dated:                                        _____
                                              Attorney(s) for

PLEASE TAKE NOTICE

NOTICE              that the within is a (certified) true copy of an Order entered
OF ENTRY            in the office of the clerk of the within named Court on          , 20____.

NOTICE OF           that an Order of which the within is a true copy will be presented for
SETTLEMENT          settlement to the Hon.                  , one of the judges of
                    within named Court, at                  on          , 20____ at
                    a.m.

DATED: Great Neck, New York
       July 9, 2018                 NAIDICH WURMAN LLP
                                     Attorneys for Plaintiff
                                     111 Great Neck Road - Suite 214
                                     Great Neck, New York 11021
                                     (516) 498-2900